UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 05-CR-501 (FJS) |
| v. | |
| **KEON RICHMOND**, | **GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION** (CORRECTED) |
| Defendant. | |

---

This memorandum is submitted in opposition to the Motion of defendant KEON RICHMOND seeking pre-trial relief.

On October 27, 2005, Indictment Number 05-CR-5013 was returned by the Albany Grand Jury. This two-count Indictment alleged that the defendant, KEON RICHMOND, falsely represented himself to be a United States Citizen during immigration interviews held at the Ulster Correctional Facility on or about May 27, 2005, and June 1, 2005, in violation of Title 18, United States Code, Section 911. The defendant appeared, pursuant to a writ, before Magistrate Judge Homer on December 15, 2005, was arraigned on the indictment, entered a plea of "not guilty" and was ordered detained.

Defendant, through counsel, seeks suppression of the statements, or parts thereof, made by the defendant to Immigration officers during the immigration interviews that took place at Ulster Correctional Facility. Further, defendant seeks suppression of statements that are admissions that he made to Bureau of Immigration and Customs Enforcement Agent Michael

1

Polouski on December 15, 2005 as he was being prepared for transportation to Albany for that days' initial appearance. The defense motion seeks suppression of the statements, alleged by the government to be false statements, that forms the basis of Counts 1 and 2. Further, the defense seeks suppression of statements made by the defendant to Agent Polouski as he was being taken into Federal Custody to face the charges in Indictment 05-CR-501. The defendant claims that he was interviewed by an immigration officer in violation of his constitutional rights thereby requiring the protections afforded to certain persons under <u>Miranda v. Arizona</u>. The defendant appears to complain that he was not advised of his right against self-incrimination and his right to counsel prior to the point where he allegedly lied to the immigration officer who was trying to determine whether he was an alien or not. Further, defendant complains that he was interviewed by law enforcement in violation of his right to counsel.

      The Government opposes the defense motion.

## **STATEMENT OF FACTS**

      On or about May 27, 2005 the defendant was encountered by an officer of the Department of Homeland Security (DHS). Defendant had been referred to DHS, Immigration and Customs Enforcement, by New York State officials as he appeared to be foreign born. Richmond was an inmate at the Ulster Correctional Facility pursuant to an unrelated New York State criminal prosecution and conviction. DHS routinely screens prison populations throughout the 50 states to locate and identity aliens in the prison population who may be subject to

deportation. DHS Deportation Officer Peter Mortensen interviewed Keon Richmond at the Ulster Correctional Facility. The defendant was present at the UCF pursuant to a New York State Criminal Conviction. Officer Mortensen informed Richmond that he was a DHS Deportation Officer and that the purpose of the interview was to determine Richmond's immigration status in the United States. Officer Mortensen told Richmond that he had reason to believe that Richmond was an alien not lawfully able to enter or remain in the United Stats. Officer Mortensen spoke to Richmond in English, confirmed that Richmond could speak English, but noted that Richmond spoke with an accent. The defendant told Officer Mortensen that he was a citizen of the United States, born in Kings County General Hospital on January 29, 1982. Officer Mortensen reduced the questions that he asked and the answers provided by Richmond to a written affidavit.[1] Mortensen then went over the form with Richmond and confirmed that the written words accurately reflected the questions asked and Richmond's answers to the questions. Richmond signed the written document before Officer Mortensen affirming the accuracy of his answers. Officer Mortensen signed the document below Richmond's signature. The purpose of the interview was administrative in nature. Criminal investigation or prosecution was not contemplated until the interview was complete. Officer Mortensen did not recite the Miranda warning to Richmond. Officer Mortensen did recite the language from the form to Richmond prior to taking his statement. The language reads as follows:

> " I...[2], acknowledge that the above-named[3] officer has identified

---

[1] The affidavit is a standard document used by DHS, Form I-215b, titled "AFFIDAVIT IN AN ADMINISTRATIVE PROCEEDING"

[2] Name of subject interviewed, in this case Keon Richmond.

[3] Inadvertently left blank on the form.

himself to me as an officer of the United States Immigration and Naturalization Service[4], authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States. He has informed me that he desires to take my worn statement regarding: MY IMMIGRATION STATUS IN THE UNITED STATES[.] He has told me that my statement must be freely and voluntarily given and has advised me of these rights: You have been arrested or interviewed because it is believed you are a [sic] alien not lawfully entitle to be or remain in the United States. You have the right to be represented by counsel of your choice at no expense to the Government. Any statement you make may be used against you in a subsequent administrative proceeding. ... You are provided with a list of the available free legal services in this district which are qualified and/or recognized by the Immigration and Naturalization Service. I am willing to male a statement without any one [sic] else being present. I swear that I will tell the truth, the whole truth and nothing but the truth, so help me, [sic] God.

---

[4]The United States Immigration and Nationality Service (INS), ceased to exist on March 1, 2003. It's duties and responsibilities now belong to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE). ICE will continue to use standard INS forms until stocks are exhausted.

Officer Mortensen then took steps to confirm the information provided by Richmond. When he learned that the information provided by Keon Richmond appeared to be false, Officer Mortensen forwarded his file on the defendant to Immigration and Customs Enforcement (ICE) Senior Special Agent Polouski.

SA Polouski then began to investigate the immigration status of Richmond. He arranged to interview Richmond in the Ulster Correctional Facility. SA Polouski, with Immigration Agent Spirios Karabinas, interviewed Richmond on June 1, 2005. Agent Polouski identified himself to Richmond and provided Miranda warning to him. Using a standard rights warning form containing the Miranda warning Agent Polouski read from the form and in so doing advised Richmond of his rights. After reading the rights to Richmond, Agent Polouski invited him to acknowledge receipt of the rights warning by signing the standard form. Richmond declined to sign the form. Agent Polouski signed the form as did Agent Karabinas. The form is attached as exhibit 1.

Agent Polouski then proceeded to interview Richmond concerning his Immigration status in the United States. Agent Polouski's questions and Richmond's answers were reduced to writing by agent Polouski. Richmond then reviewed the written document and affixed his signature to the document in the presence of Agents Polouski and Karabinas. Agent Polouski went over the written statement, including the rights warning that is printed at the top of the first page, with Richmond before Richmond singed the document.

Agent Polouski continued the investigation. As a result of the investigation the Grand Jury returned an indictment, Indictment number 05-CR-501, accusing Richmond of making two separate false claims of United States citizenship, in violation of 18U.S.C. Section 911..

As Richmond was a prisoner in New York State custody at the time of the offenses alleged in the indictment, the Government took steps necessary to secure his appearance in the NDNY on the indictment. The government secured a writ from Magistrate Judge Treece on November 23, 2005 which directed that Richmond be produced from New York State custody for an appearance in Federal Court on December 15, 2005. In apparent anticipation of the December 15, 2005 court appearance, Magistrate Judge Homer appointed the Office of the Federal Defender to represent Richmond on or about December 14, 2005. The Government is not aware of any steps being taken by the Court to determine if Richmond sought assigned counsel or qualified for assigned counsel prior to the FPD being appointed on December 14, 2005. The Government is aware that the Magistrate Judge did inquire, as he does in every case that comes before him, as to Richmond's desire to retain counsel or to seek the appointment of counsel, at the initial appearance on December 15, 2005. Upon information and belief, the appointment did not become effective until Richmond's appearance in court on December 15, 2005 at which time the Magistrate Judge made a determination that Richmond sought counsel and qualified for the appointment of the same.

The conduct that forms the basis of this prosecution occurred during immigration interviews conducted by the Department of Homeland Security. Some of the evidence that the defendant seeks to have suppressed, statements, were made by the defendant to the DHS Official during the immigration interview. The defendant was seeking to avoid adverse immigration consequences, most likely deportation, which was a purpose of the interviews. In the event that the immigration official had found the defendant's statement that he was born in the United States credible, than the defendant would not have been considered for immigration processing.

6

The immigration interviews were both part and parcel of an administrative process and proceeding. The protections afforded criminal subjects did not apply. During the course of the interviews the defendant lied about his place of birth and citizenship, among other things. If the defendant had told the truth, or if he had remained silent during the interview, it is likely that he would have been processed by DHS for deportation. He would not, however, be subject to criminal prosecution as is now the case.

## I. IMMIGRATION INTERVIEWS OF MAY 27 AND JUNE 1 2005

### SELF INCRIMINATION

The Fifth Amendment protects an individual's right to be free from compelled self-incrimination. The government may use at trial only those confessions that are voluntarily made. Title 18, United States Code, Section 3501(a), <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964). The Fifth Amendment, however, does not provide an individual with the right to lie. Title 18, United States Code Section 911 is one of several statutes that expressly criminalizes false statements. The United States Supreme Court, in a case where a witness subject to criminal investigation was called to testify before a grand jury and testified falsely, stated that the protections of the Fifth Amendment do not cover false statements. <u>United States v. Wong</u>, 431 U.S.174, 97 S.Ct. 1823 (1977) The defendant in Wong was subpoenaed to testify before a grand jury investigating criminal activity. The Government suspected that Wong was involved in criminal activity. For purposes of the court's discussion Wong was treated as if she was not properly advised of her Fifth Amendment rights. She lied during her Grand Jury testimony and was later indicted for

7

perjury. The Court noted that the Fifth Amendment does not condone perjury. The defendant can chose to answer truthfully or remain silent consistent with the Fifth Amendment. The Court pointed out that there are legal ways to challenge questions of the Government, lying is not one of them. Wong at 180, citing Bryson v. United States, 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969); United States v. Mandujano, 425 U.S., at 577, 585, 96 S.Ct., at 1777, 1781 (Brennan, J. concurring in judgment); id., at 609, 96 S.Ct. At 1792 (Stewart, J., concurring in judgment).

The position that the statute involved in the prosecution violates the "spirit" of the Fifth Amendment was rejected by the Supreme Court which held that "the Fifth Amendment does not confer a privilege to lie." Brogan v. United States, 552 U.S. 398, 118 S.Ct. 805 (1998) citing United States v. Apfelbaum, 445 U.S. 115, 117, 100 S.Ct. 948, 950, 63 L.Ed.2d 250.

The defendant's motion comes down to the proposition that he should have been advised of his right to remain silent while he was lying to Officer Mortensen during the immigration interview on May 27, 2005 and Agent Polouski in June 1, 2005. The Second Circuit has stated that a defendant need not be advised of his right to silence or counsel while engaging in a crime. United States v. Haynes, 398 F.2d 980, 987-88, (2d Cir. 1968), cert denied 393 U.S. 1120 (1969)

The Second Circuit has specifically addressed the situation which is involved in this case. Where a criminal defendant sought suppression of statements that he made to an INS agent during a immigration interview that was conducted in a New York State Correctional facility while the defendant was incarcerated based on unrelated state charges, the Second Circuit held that Miranda warning were not required to be provided. United States v. Rodriguez, 356 F.3d 254 (2d Cir. 2004) Officer Mortensen was not investigating a crime and he was not seeking nor

8

did he expect incriminating information from Richmond as he interviewed him. He was not interrogating him. United States v. Salgado, 292 F.3d 1169 (9th Cir. 2002), discussed favorable by the Second Circuit in Rodriguez, at 260. The May 27 and June 1, 2005 interviews were both immigration interviews, Miranda warnings were not necessary, and the statements made by Richmond in response to the officer's questions were false.

**RIGHT TO COUNSEL**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defense." United States Constitution, Amendment VI. The right to counsel attaches at the initiation of adversarial judicial proceedings "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 92 S.Ct. 1877m 1882, 32 L.Ed.2d 411 (1972) Request for counsel need not be made by the accused for the Sixth Amendment right to attach. Brewer v. Williams, 430 U.S. 387, 404 (1977) After a defendant's Sixth Amendment right to counsel attaches he has the right to advice of counsel at "critical stages" of the proceeding, defined as "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55L.Ed.2d 426 (1975); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149(1967)

The defendant was not represented by counsel during the immigration interviews on May 27 and June 1, 2005. The Sixth Amendment right does not attach at deportation hearings which

9

are civil in nature. United States v. Yousef, 2003 WL 1786882, __F.3d__ (2d Cir. 2003), citing United States v. Paredes-Batista, 140 F.3d 367, 377 (2d Cir. 1998) The immigration interviews are designed to determine if the subject is an alien and if he or she is subject to being deported due to his or her immigration status. The fact that Keon Richmond was not represented by counsel during the interviews does not render the statements made by him during the interviews involuntary. Nothing that the immigration official, either Officer Mortensen or Agent Polouski, said to or asked of the defendant Richmond during the immigration interviews altered the administrative character of the interviews. The officials sought to determine where the defendant was born. Agent Polouski did, in fact, provide Miranda warnings to Richmond prior to conducting the interview of June 1, 2005. Agent Polouski was not required to provide the warnings but he did so anyway. Again, the information that Agent Polouski sought was not intended to incriminate Richmond or produce evidence for a criminal prosecution. Rather, Agent Polouski had reason to believe that an alien, Richmond, was seeking to avoid deportation by falsely claiming to be a United States citizen. Miranda warnings were not required, but, in fact, they were provided. Richmond waived his rights and proceeded to lie to the agent about his citizenship and place of birth.

The defense argument seeks to stretch constitutional protections available to arrested and accused persons and encompass those individuals committing criminal acts during administrative proceedings. The government requests that the court decline the defense request to expand the constitutional safeguards of the Fifth and Sixth Amendments.

## II. CUSTODIAL INTERROGATION STATEMENTS

# SELF INCRIMINATION

When agents Polouski and Karabinas took custody of Richmond on December 15, 2005 prior to his transport to NDNY, Agent Polouski verbally advised him of his Miranda warnings and also gave him a document to read that contained the Miranda warnings in English. After advising Richmond of his Miranda warnings, Agent Polouski also informed him that he had evidence showing that Richmond was not born in the United State and that he was not a United States citizen. Agent Polouski then provided Richmond the opportunity to correct the incorrect information that he had previously provided about his citizenship and place of birth. Richmond waived his rights and made a statement in which he admitted that he was born in Port Of Spain, Trinidad, and that he was a citizen of Trinidad and Tobago. This interview was conducted at the Fishkill Correctional Facility in Fishkill, Duchess County.

Failure by law enforcement agents to give <u>Miranda</u> warnings and obtain a waiver of rights before custodial questioning of a detained person generally requires exclusion of any statements obtained. <u>Missouri v. Siebert</u>, 542 U.S.600, 124 S. Ct. 2601, 2607-08 (2004) (citing <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The "totality of the circumstances" concerning this interview demonstrate that Richmond understood his rights and knowingly waived them. <u>United States v. Anderson</u>, 929 F.2d 96, 99 (2d cir. 1991). Defendant argues that the failure of Richmond to sign the rights warning waiver serves to show that he actually invoked his right to remain silent. It is clear that a written waiver is not required. <u>United States v. Boston</u>, 508 F.2d 1171, 1174 (2d. Cir. 1974). Richmond did not invoke his rights. He waived them after being advised of them by the arresting officer.

# RIGHT TO COUNSEL

Defendant asserts that the Magistrate's appointment of counsel, dated December 14, 2005 and entered by the clerk on December 15, serves as putting the government on notice that Richmond was represented by the Albany Federal Public Defender's office on December 15, 2005 before Agent Polouski interviewed him. Neither the AUSA nor the case agent, Agent Polouski, was aware of the appointment and did not learn of the fact that it may have occurred prior to December 15, 2005 until it received the defense motion. The government was under the impression that the appointment of counsel took place at the initial appearance and arraignment that occurred on December 15, 2005. According to Federal Rule of Criminal Procedure 44(a), "A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right." Defendant claims that the attorney-client relationship began prior to the initial appearance. Defendant presents the appointment order singed by Magistrate Judge Homer on December 14, 2005, the day before the initial appearance, as authority for that contention. The plain language of the statue which ensures that an indigent defendant be protected by counsel states that the right to such appointed counsel commences upon the initial appearance, not prior to that time. Fed.R.Crim.P.44(a).

The Agent who interviewed Richmond was not aware that Richmond might be represented by counsel. Upon information and belief, neither Richmond nor his counsel was aware of the assignment until the court appearance on December 15, 2005. Even if Richmond

was represented by counsel as a result of the Magistrate's order, he waived any right to counsel after being advised of his Miranda warnings by Agent Polouski. There is no 6th Amendment violation when defendant confessed in post-indictment interview after being read Miranda rights and waiving such rights. United States v. Hernandez, 281 F.3d 746, 748 (8th Cir. 2002). The Supreme court has held that the Miranda warnings are sufficient to adequately inform a subject of his or her sixth amendment right to counsel. Patterson v. Illinois, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed. 2d 261 (1988).

**CONCLUSION**

For the foregoing reasons, the motion seeking pretrial relief should be denied.

Dated: February 10, 2006				Respectfully submitted,

							GLENN T. SUDDABY
							UNITED STATES ATTORNEY


			By:
							Edward P. Grogan
							Assistant U.S. Attorney

13